UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
DR. AMIT BANDYOPADHYAY, PE,
FASCE,

                Plaintiff,                  **MEMORANDUM & ORDER**
                                                                   19-CV-6186 (PKC) (RLM)

           - against -

STATE UNIVERSITY OF NEW YORK, and
SUNY COLLEGE OF TECHOLOGY
FARMINGDALE STATE COLLEGE,

                Defendants.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff Dr. Amit Bandyopadhyay, PE, FASCE,[1] brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, against Defendants State University of New York ("SUNY") and SUNY College of Technology Farmingdale State College ("Farmingdale College"),[2] alleging discrimination based on color and national origin in connection with his denial of a promotion to Dean and Provost of Farmingdale College. (*See generally* Amended Complaint ("Am. Compl."), Dkt. 16.) Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkts. 18, 21.) For the reasons discussed below, the Court denies the motion.

---

[1] PE and FASCE denote, respectively, Professional Engineer and Fellow of the American Society of Civil Engineers. *See Member: Fellow*, AM. SOC'Y OF CIVIL ENG'RS, available at https://www.asce.org/membership/fellow/ (last visited Mar. 29, 2021).

[2] Defendants clarify that the entity Plaintiff refers to is SUNY's Farmingdale State College. (Defs.' PMC letter, Dkt. 18, at 1.)

1

# BACKGROUND[3]

## I. Relevant Facts

Plaintiff is of Indian national origin, and has brown skin and a discernable accent. (Am. Compl., Dkt. 16, ¶ 2.) He holds a Bachelor's degree in Civil Engineering from the University of Calcutta, India, a Master of Science ("M.S.") in Civil Engineering from Penn State University, and a Doctor of Philosophy ("PhD") in Civil Engineering from Penn State University. (*Id.* ¶ 13.) He has had over 40 years of experience in engineering, and has been employed as a professor at Farmingdale College since 1990. (*Id.* ¶¶ 5–6, 13.) Between 1997 and 2014, Plaintiff served as a full professor and Chair of the Architecture & Construction Management Department. (*Id.* ¶¶ 6–7, 9.) Plaintiff's performance in these roles was exemplary; in 2004, he was awarded the SUNY Distinguished Service Professor Award, and during his time as Department Chair, he "developed two new B.S. programs and part of a M.S. program, and doubled the enrollment in the Engineering Department." (*Id.* ¶¶ 8, 10.)

In 2017, Plaintiff applied for the position of Dean of the School of Engineering Technology. (*Id.* ¶ 11.) Plaintiff was well-qualified for the position, having extensive work, industry, education, and teaching experience; awards and peer accolades; and publications in the field. (*Id.* ¶¶ 13–19.) Given his exceptional qualifications, Plaintiff "was recommended by the peer search committee as one of the final candidates" for the Dean position, "and went through an extensive interview process" in Fall 2017. (*Id.* ¶ 20.)

The interview process consisted of: an interview with the search committee; an hour-long interview with a Dean and two Assistant Deans, all of whom are Caucasian; an hour-long interview

---

[3] The Court assumes the truth of Plaintiff's well-pleaded, non-conclusory allegations. *See Kiobel v. Royal Dutch Petrol. Co.*, 621 F.3d 111, 123 (2d Cir. 2010).

with the Provost and Associate Provost, both of whom are Caucasian; and an interview with the President of the College, who is also Caucasian. (*Id.* ¶¶ 21–23.) Plaintiff alleges that, "[u]pon information and belief, [he] was the only internal candidate and was supremely qualified for the position." (*Id.* ¶ 24.) Notwithstanding his qualifications, "on January 25, 2018, Defendant[s] sent a blast email to faculty that the search had failed to find a candidate for the position of Dean and the position remain[ed] open and available." (*Id.* ¶ 25.)

Eventually, in the summer of 2018, the position was filled by Dr. Barbara Christe.[4] (*Id.*) According to Plaintiff, Dr. Christe, who is Caucasian, was "far less qualified for the position" than was Plaintiff. (*Id.*) For instance, while Plaintiff holds a PhD in civil engineering from Penn State University, Dr. Christe holds a PhD in higher education, unrelated to any engineering discipline, from a for-profit online university. (*Id.*) Furthermore, while Plaintiff was a Distinguished Service Professor at SUNY, Dr. Christe was an associate professor in a department that did not exist at Farmingdale College. (*Id.*) Finally, Plaintiff had more experience than Dr. Christe in accreditation, *i.e.*, he chaired the Accreditation Board for Engineering and Technology ("ABET") and had 10+ years of experience at the commissioner level, while Dr. Christe had only 4+ years of commissioner experience; department management, *i.e.*, he chaired the department for 24 years, while Dr. Christe was a program coordinator for only a few years; and industry, *i.e.*, he had nine years of industry experience, including seven years at the supervisory level, while Dr. Christe had only two years of industry experience. (*Id.*)

Furthermore, Defendants were also hiring for the positions of Provost, Associate Provost, and Assistant Provost. (*Id.* ¶ 28.) Only the Assistant Provost position was announced, but the

---

[4] Plaintiff refers to "Dr. Barbara Christie," but Defendants clarify that her surname is spelled "Christe." (Defs.' Br., Dkt. 21, at 2 n.3.)

3

"search was canceled without an interview" after Plaintiff applied. (*Id.*) Eventually, "[a]ll three positions were filled by Caucasian employees who[,] upon information and belief[,] [were] less qualified than Plaintiff." (*Id.* ¶ 29.) For instance, Plaintiff alleges that he was more qualified than Dr. Laura Joseph, who was hired as Provost, because: Plaintiff had a PhD in engineering, while Dr. Joseph had a Doctor of Education in higher education; he had 24 years of experience as department chair, while she had only 10; and he had nine years of industry experience, while she had none. (*Id.* ¶ 31.) Plaintiff also alleges that he was more qualified than both Dr. Michael Goodstone, who was hired as Associate Provost, and Dr. J. Bryer, who was hired as Acting Assistant Provost, because they had only seven and less than five years of experience as department chairs, respectively. (*Id.* ¶ 34.)

In commencing this action pursuant to Title VII, Plaintiff seeks a declaration that Defendants discriminated against him; an injunction preventing Defendants from discriminating against him in the future and retroactively promoting Plaintiff to the position of Dean, Provost, Associate Provost, or Assistant Provost of the School of Engineering Technology; and damages. (*Id.* ¶ 38.)

## II.     Procedural History

Plaintiff received a right-to-sue letter from the Equal Employment Opportunity Commission on August 7, 2019 (Dkt. 16-1), and commenced this action on November 1, 2019 (*see generally* Complaint, Dkt. 1). (Am. Compl., Dkt. 16, ¶ 4.) Plaintiff, with leave, filed his Amended Complaint on February 25, 2020. (Dkt. 16; *see also* 1/29/2020 and 2/18/2020 Docket Orders.) On May 22, 2020, Defendants filed a pre-motion conference request in connection with their anticipated motion to dismiss. (Dkt. 18.) On June 2, 2020, the Court denied a pre-motion conference as unnecessary and construed Defendants' pre-motion conference request as the motion

4

itself. (6/2/2020 Docket Order.) Briefing in connection with Defendants' motion to dismiss was completed on July 24, 2020. (Dkts. 21–23.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (internal citation omitted). In addressing a motion to dismiss, the court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citations omitted). "The Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'" *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 418–19 (S.D.N.Y. 2019) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).

## DISCUSSION

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation,

5

terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To establish a *prima facie* case of employment discrimination under Title VII, a plaintiff must show that (1) he was "within [a] protected class"; (2) he was "qualified for the position"; (3) he "was subject to an adverse employment action"; and (4) "the adverse action occurred under circumstances giving rise to an inference of discrimination." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009), *superseded in part by statute as stated in Vogel v. CA*, *Inc.*, 662 F. App'x 72 (2d Cir. 2016) (summary order); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A failure to promote may constitute an adverse employment action for Title VII purposes, and a plaintiff bringing such a claim must plead "that the failure to promote occurred under circumstances giving rise to an inference of discriminatory intent." *Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 266 (E.D.N.Y. 2013) (citing, *inter alia*, *Yu v. N.Y.C. Hous. Dev. Corp.*, 494 F. App'x 122, 124–25 (2d Cir. 2012) (summary order)).

"The burden of establishing a *prima facie* case in an employment-discrimination case is minimal." *Champion v. N.Y. State Office of Parks, Recreation & Historic Preservation*, No. 18-CV-4955 (PAE) (KHP), — F. Supp. 3d —, 2020 WL 6487638, at *8 (S.D.N.Y. Nov. 4, 2020) (internal quotation marks omitted) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)); *see also Taylor v. City of New York*, 207 F. Supp. 3d 293, 304 (S.D.N.Y. 2016) ("The Second Circuit has counseled that, at the pleading stage, a plaintiff faces only a 'minimal' burden." (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015))). To defeat a motion to dismiss, a plaintiff "need only give plausible support to a minimal inference" that "his race, color, religion, sex, or national origin was a motivating factor in the employment decision."

6

*Vega*, 801 F.3d at 84, 86 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 306, 311 (2d Cir. 2015)). A plaintiff may meet this burden

> through direct evidence of intent to discriminate, or by indirectly showing circumstances giving rise to an inference of discrimination. A plaintiff may prove discrimination indirectly either by . . . showing that the employer's stated reason for its employment action was pretext to cover[ ]up discrimination, or by otherwise creating a "mosaic" of intentional discrimination by identifying "bits and pieces of evidence" that together give rise to an inference of discrimination.

*Id.* at 87 (internal citations omitted).

"In a failure-to-promote claim, an inference of discrimination [] may be raised when a plaintiff plausibly alleges that similarly situated employees outside of plaintiff's protected class received more favorable treatment." *Brodt v. City of New York*, 4 F. Supp. 3d 562, 570 (S.D.N.Y. 2014) (citing *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95–96 (2d Cir. 1999)); *see also Staten v. City of New York*, No. 14-CV-4307 (ER), 2015 WL 4461688, at *11 (S.D.N.Y. July 20, 2015) (citing *Norville*, 196 F.3d at 95), *aff'd*, 653 F. App'x 78 (2d Cir. 2016); *Lovell v. Maimonides Med. Ctr.*, No. 11-CV-4119 (KAM) (LB), 2013 WL 4775611, at *12 n. 23 (E.D.N.Y. Sept. 6, 2013) ("[I]t is possible to draw an inference of discrimination regarding a failure to promote claim where a plaintiff is rejected for a position which is later filled by an individual outside of the plaintiff's protected class[.]"); *Shortt v. Congregation KTI*, No. 10-CV-2237 (ER), 2013 WL 142010, at *9 (S.D.N.Y. Jan. 9, 2013) ("For claims brought under Title VII, in order to raise an inference of discrimination at the *prima facie* stage, it is typically sufficient for a plaintiff to show that the position was filled by someone outside of his protected class."); *Pierre v. City of New York*, No. 17-CV-5782 (JGK), 2020 WL 353538, at *6 (S.D.N.Y. Jan. 21, 2020) ("The fourth element can be satisfied by demonstrating that the position was filled by someone outside of Plaintiff's protected class."), *aff'd*, No. 20-627, — F. App'x —, 2021 WL 485723 (2d Cir. Feb. 10, 2021).

With respect to the position of Dean, Defendants do not dispute that Plaintiff satisfied the first three requirements, *i.e.*, he sufficiently pled that he (1) is within a protected class; (2) was qualified for the position of Dean; and (3) applied for a promotion but was denied the position. (*See* Defs.' Br., Dkt. 21, at 1–3.) Instead, Defendants argue only that Plaintiff has failed to plausibly allege that his denial was due to discrimination because he does not establish that he and the successful candidate, Dr. Christe, were similarly situated "in all material respects." *See Brodt*, 4 F. Supp. 3d at 570 (quoting *Norville*, 196 F.3d at 95). In so arguing, Defendants note that, while Plaintiff explains why he fulfilled each of the fourteen qualifications under the job description, he fails to allege whether Dr. Christe met each of those qualifications. (Defs.' Br., Dkt. 21, at 1–2; *see also* Am. Compl., Dkt. 16, ¶ 12.)

The Court, therefore, focuses on whether Plaintiff has sufficiently alleged that the denial of promotion resulted from discrimination. Defendants are correct that courts sometimes require plaintiffs to compare themselves "to employees who are similarly situated in all material respects." *Brodt*, 4 F. Supp. 3d at 570 (internal quotation marks omitted). More often, however, courts are satisfied that plaintiffs establish a minimal inference of discriminatory intent simply "by showing that the position was filled by someone outside the protected class." *Diaz v. N.Y.C. Transit Auth.*, 98 F. App'x 58, 59 (2d Cir. 2004) (summary order); *see Morris v. Ales Grp. USA, Inc.*, No. 04-CV-8239 (PAC) (THK), 2007 WL 1893729, at *9 (S.D.N.Y. June 29, 2007) (finding that an inference of discrimination may arise "if the position remains open and the employer continues to seek applicants of the plaintiff's qualifications, *or* if the position was filled by someone not a member of plaintiff's protected class." (emphasis added) (first citing *McDonnell Douglas*, 411 U.S. at 802; then citing *de la Cruz v. N.Y.C. Hum. Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996))); *Littlejohn*, 795 F.3d at 313 ("The fact that a plaintiff was replaced by someone

outside the protected class will ordinarily suffice for the required inference of discrimination at the initial prima facie stage of the Title VII analysis[.]"); *see also Monger v. Conn. Dep't of Transp.*, No. 17-CV-205 (JCH), 2019 WL 399908, at *10 (D. Conn. Jan. 31, 2019) (finding that, because it was "undisputed that all of the promotional opportunities at issue in this case were given to . . . people outside of [plaintiff]'s protected class," plaintiff "carried his 'minimal' burden of adducing evidence that the alleged discriminatory denials of promotion occurred under circumstances giving rise to an inference of discrimination" (citing *Littlejohn*, 795 F.3d at 313)), *appeal dismissed sub nom. Monger v. Dep't of Transp.*, No. 19-826, 2019 WL 4784807 (2d Cir. Sept. 11, 2019); *Feliciano v. City of New York*, No. 14-CV-6751 (PAE), 2015 WL 4393163, at *4 (S.D.N.Y. July 15, 2015). Here, Plaintiff alleges *both* that the position remained open after he went through the interview process, and that the position was eventually filled by someone outside of his protected class. He has therefore satisfied the minimal burden at this stage of alleging that the denial of his promotion to Dean was discriminatory.

However, even if the Court were to require Plaintiff to make a showing of being similarly situated to the individuals who were treated preferentially, the Court finds that, drawing all reasonable inferences in Plaintiff's favor, Plaintiff has demonstrated that he and Dr. Christe were *at least* similarly situated in all material respects, though Plaintiff alleges that he was *more* qualified. They both have PhDs, were professors in universities' engineering departments, had experience at the ABET commissioner level, were in leadership positions at the department level, and had industry experience. (Am. Compl., Dkt. 16, ¶ 25.) These facts, construed in Plaintiff's favor, plausibly allege that he and Dr. Christe were similarly situated, thus giving rise to an inference of discriminatory intent. *Cf. Kallinikos v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 481 F. Supp. 3d 76, 86 (E.D.N.Y. 2020) (finding evidence of a "*prima facie* case of employment

9

discrimination" sufficient to overcome summary judgment where "plaintiff interviewed five times for ten open [] positions, [] each position was filled by an individual outside plaintiff's protected classes," and "[p]laintiff and the promoted candidates were similarly situated in that all had strong resumes, many years of service [], and similar test scores on the qualifying exam").

For similar reasons, the Court finds that Plaintiff has plausibly alleged an inference of discriminatory intent with respect to the failure to promote him to the Provost, Associate Provost, and Assistant Provost positions. As stated above, Plaintiff is within a protected class. Plaintiff alleges that he was qualified for the positions because he could fulfill the Provost Office responsibilities of (1) "direct[ing] supervision to all academic units, support services, and operations" (because he had "twenty-four years [of] supervisory experience in academia and about seven years [of] supervisory experience in industry"); (2) being reported to by various school deans and academic directors (because "all faculty members . . . in the department reported to [Plaintiff]" when he served as department chair); and (3) serving as the chief academic officer (because "Plaintiff was the chief academic officer and executive officer of the department" and "chief executive officer of the building during industry work"). (Am. Compl., Dkt. 16, ¶ 30.)

Defendants argue that Plaintiff summarizes only the functions of the Office of the Provost in general and does not provide descriptions of the three Provost positions at issue (Defs.' Br., Dkt. 21, at 3–4), but given the allegation that the positions were either not publicly posted or filled without any meaningful search or peer evaluation process (*see* Am. Compl., Dkt. 16, ¶ 28), it is unsurprising that Plaintiff lacked access to any official job description. Based on the functions of the Office of the Provost, and drawing reasonable inferences in Plaintiff's favor, the Court finds it plausible that Plaintiff was qualified for the three positions in the Office of the Provost.

10

Defendant further argues that Plaintiff fails to allege that he attempted to apply for the positions of Provost or Associate Provost. (Defs.' Br., Dkt. 21, at 4.) Courts recognize a "narrow exception to the specific application requirement" where an employee demonstrates "that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, No. 00-CV-6307 (KMK), 2007 WL 259937, at *11 (S.D.N.Y. Jan. 29, 2007) (internal quotation marks and citations omitted), *aff'd*, 307 F. App'x 596 (2d Cir. 2009); *see also Mauro v. S. New England Telecomms., Inc.*, 208 F.3d 384, 387 (2d Cir. 2000) (per curiam) ("[T]hat [specific application] requirement does not apply where . . . the plaintiff indicated to the employer an interest in being promoted to a particular class of positions, but was unaware of specific available positions because the employer never posted them."). Plaintiff alleges that, "[b]ecause the Provost position was not posted and there was no open search, [he] did not have an opportunity to apply for the Provost position[.]" (Am. Compl., Dkt. 16, ¶ 31.) With respect to the Associate Provost position, Plaintiff similarly alleges that "there was no posting," and thus he could not apply. (*Id.* ¶ 32.) Based on these allegations and the fact that Plaintiff applied for the Dean and Assistant Provost positions, the Court can reasonably infer that Plaintiff would have applied for the Provost and Associate Provost positions had he known about those vacancies. Plaintiff thus has sufficiently alleged that he was denied a promotion.

Finally, for the reasons already discussed in the context of Plaintiff's application to the position of Dean, the Court finds that the subsequent hiring of Drs. Joseph, Goodstone, and Bryer—all of whom were outside Plaintiff's protected class—to the positions of Provost, Associate Provost, and Assistant Provost, respectively, gives rise to an inference of discrimination. *Cf. Kallinikos*, 481 F. Supp. 3d at 86.

Accordingly, the Court finds that Plaintiff has sufficiently pleaded an employment discrimination claim pursuant to Title VII as to the position of Dean and the three Provost Office positions.

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss (Dkts. 18, 21) is denied.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 30, 2021
      Brooklyn, New York